David H. SPAULDING and Daniel J. Kois, Appellants (Plaintiffs Below),

v.

INTERNATIONAL BAKERS SERVICES, INC., Appellee (Defendant Below).

No. 93S02–9002–EX–143.

Supreme Court of Indiana.

Feb. 20, 1990.

Robert J. Palmer, May Oberfell & Lorber, Robert F. Gonderman, Sr., Gonderman Law Offices, P.C., South Bend, for appellants.

Stanley C. Fickle, Barnes & Thornburg, Indianapolis, Paul E. Becher, Barnes & Thornburg, Elkhart, for appellee.

DICKSON, Justice.

During and in the course of their employment with defendant-employer International Bakers Services, Inc., employees David Spaulding and Daniel Kois were exposed to an unknown substance which resulted in chronic obstructive airway disease. It is stipulated that both Spaulding and Kois suffered an occupational disease compensable under the Occupational Diseases Act, Ind.Code §§ 22–3–7–2 to 22–3–7–38. They each filed a claim under the Act, seeking compensation for, *inter alia*, total permanent disability.

Concluding that the standard for assessing such disability is similar to that applied in cases arising under the Worker's Compensation Act, Ind.Code §§ 22–3–2–2 to 22–3–6–3, a single hearing judge of the Industrial Board [1] denied the employees' claims for total permanent disability. On review, the full Industrial Board affirmed the order of the hearing judge.

The Court of Appeals reversed the Industrial Board decision, finding error in the Board's resort to the Worker's Compensation standard for assessing total permanent disability under the Occupational Diseases Act. The Court of Appeals held that the proper standard to be applied is found in the definitions of "disability" and "disablement" under the Occupational Diseases Act at Ind.Code § 22–3–7–9(e). *Spaulding v. International Bakers Services, Inc.* (1988), Ind.App., 531 N.E.2d 1222.

The employer seeks transfer and contends that the opinion of the Court of Appeals erroneously decides a new question

of law and that the meaning of "total permanent disability" as construed under Worker's Compensation Act cases to mean an inability to carry on reasonable types of employment considering the employee's physical and mental fitness and the availability of the employment [2] should be given to the same phrase as used in the Occupational Diseases Act. The employer thus seeks to avoid a construction whereby a worker injured by occupational disease would be entitled to the full benefits prescribed for total permanent disability upon a mere showing of any diminution of ability to earn the same wages as when last exposed to the hazard.

In response, the employees urge that the Court of Appeals is correct and argue that the effect of its ruling is that eligibility for total permanent disability benefits "requires only that the employee cannot earn full wages at the work he was previously doing, or equal wages in other suitable employment." Appellants' Brief in Opposition to Petition to Transfer at 25. Thus, under the employees' view, total permanent disability exists where an employee's disease permanently prevents the earning of *full* or *equal* wages, regardless of whether he can earn *some* wages. This view is premised on the dichotomy that a claimant either is or is not able to earn full or equal wages.

While we agree with the Court of Appeals that the meaning of "total permanent disability" under the Occupational Diseases Act must be determined from the Act itself and does not require application of the standard under the Worker's Compensation Act, we grant transfer to resolve the implied and unaddressed issue regarding the resulting definition and its application.

The controversy primarily involves two provisions of the Occupational Diseases

---

1. Created in 1988, the Worker's Compensation Board has replaced the Industrial Board as the entity charged with the operation and administration of the compensation provisions of the Worker's Compensation Act and the Occupational Diseases Act. Ind.Code §§ 22–3–1–1, 22–3–7–23.

2. *Rork v. Szabo Foods* (1982), Ind., 439 N.E.2d 1338; *Perez v. United States Steel Corp.* (1981), Ind., 428 N.E.2d 212.

Act. The definitional section, Ind.Code § 22–3–7–9, provides in subsection 9(e):

> As used in this chapter, "disablement" means the event of becoming disabled from earning full wages in the work in which the employee was engaged when last exposed to the hazards of occupational disease by the employer from whom he claims compensation or equal wages in other suitable employment, and "disability" means the state of being so incapacitated.

Among the various awards specified by the Act, subsection 16(d)(4) provides:

> For disablements for occupational disease resulting in total permanent disability, five hundred weeks.

 In reviewing a statute, our foremost objective is to determine and effect legislative intent. *Park 100 Dev. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Foremost Life Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096. We examine and interpret a statute as a whole, giving words common and ordinary meaning "and not overemphasizing a strict literal or selective reading of individual words." *Id.* Nevertheless, " 'where, in an act it is declared that a term shall receive a certain construction, the courts are bound by that construction, though otherwise the language would be held to mean a different thing.' " *Department of State Revenue v. Crown Dev. Co.* (1952), 231 Ind. 449, 456, 109 N.E.2d 426, 428–29, n. 1 (quoting *State ex rel. Baker v. Grange* (1929), 200 Ind. 506, 510, 165 N.E. 239, 240). *Accord Northwest Ind. Educ. Ass'n v. School City of Hobart* (1987), Ind.App., 503 N.E.2d 920, 921.

We initially observe that the "Work[er's] Compensation Act and the Occupational Diseases Act contain separate and distinct provisions, and ... a legal interpretation of one act cannot force a similar conclusion when a different act with different provisions is under consideration." *Snyder*

*Constr. Co. v. Thompson* (1969), 145 Ind. App. 103, 109, 248 N.E.2d 560, 563.

In 1937, the legislature enacted the Indiana Workmen's Occupational Diseases Act, Ind.Code §§ 40–2201 to 40–2231 (Burns Repl.1940), to compensate employees who contracted occupational diseases, which were generally not covered under the then-existing Workmen's Compensation Act. Small, *Workmen's Compensation Law of Indiana* § 13.1 (1950). The present Act spans Ind.Code §§ 22–3–7–2 to 22–3–7–38. An employee is entitled to compensation where he suffers from an occupational disease *and* a resulting "disablement." *Sinclair Ref. Co. v. West* (1942), 112 Ind. App. 200, 44 N.E.2d 175. Unlike the Worker's Compensation Act, the Occupational Diseases Act defines the terms "disablement" and "disability." The original subsection read as follows:

> The term "disablement" means the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation, or equal wages in other suitable employment and "disability" means the state of being so incapacitated.

Ind.Code § 40–2205(d) (Burns Repl.1940). In 1985, the legislature added the phrase "As used in this chapter" to the beginning of subsection 9(e).

It is evident that the legislature intended "disability" as defined in subsection 9(e) to be applied throughout chapter 7, which is the Occupational Diseases Act. *Crown Dev. Co.*, 231 Ind. at 456, 109 N.E.2d at 428. *See McGinnis v. American Foundry Co.* (1958), 128 Ind.App. 660, 665, 149 N.E.2d 309, 312 (legislature defined "disablement" for purpose of the Act). The Court of Appeals was correct in reaching the same conclusion. The intended meaning and application of "disability," however, require a closer examination of the Act.

The employees assert that a person either is or is not disabled from earning full or equal wages and, therefore, that total permanent disability can be established

upon a mere showing that the employee will not be able to earn full or equal wages. The employer argues that the Act repeatedly distinguishes between "partial" and "total" disability, which emphasizes that the severity of disability is significant in determining proper compensation.

Subsection 9(e) defines "disability" only as the state of being disabled from earning full wages or equal wages in other suitable employment. This somewhat circular definition does not of itself indicate whether "disability" was intended to have an element of severity relevant to determining compensation. It has been suggested that the statutory definition of "disability" simply refers to the loss of wage-earning ability. Small, *supra*, § 13.4. To resolve its intended meaning, we consider other portions of the Act, particularly Ind.Code § 22-3-7-16, where "disability" is used in designating various benefits or entitlements. In construing the intended meaning of "disability," we should avoid a construction that will render confusing or meaningless its use in other contexts.

For "disablements ... resulting in" *temporary total disability*, subsection 16(b) provides a specified rate of compensation and specified maximum period depending on the date of disablement. Similarly, a specified method of rate calculation and designated maximum period of compensation is stated in subsection 16(c) for disablements resulting in *temporary partial disability*. Subsection 16(d) provides for fixed awards, in the form of a designated number of weeks of benefits, in accordance with a schedule applicable to injuries in the nature of losses, impairments, and disfigurements which are permanent. It is in subsection 16(d)(4) that the phrase *total permanent disability* appears.[3] In subsection 16(e) the words "partially disabled" are used to identify those employees subject to the loss of benefits in the event of an unjustifiable refusal of an offer of suitable employment.

Because they contend that "disability" means the inability to earn *full* wages due to an occupational disease, the construction advocated by employees Spaulding and Kois would render unnecessary and redundant the word "total" in the phrase "total disability." Similarly, their proposed application of the definition of "disability" would make the phrase "partial disability" self-contradictory and therefore ambiguous.

■ We find that "disability" as used in the Occupational Diseases Act means a loss of wage-earning ability which has two distinct aspects: severity and duration. Clearly, temporary *total* disability and temporary *partial* disability are distinguishable in the severity of the loss of wage-earning ability. Likewise, *temporary* total disability differs from total *permanent* disability in duration.

We therefore conclude that, under the Occupational Diseases Act, "disability" refers to the loss of wage-earning ability and that entitlement to compensation for "total permanent disability" rests upon a showing that a claimant is permanently unable to earn any wages at his or her last work or in "other suitable employment." Ind.Code § 22-3-7-9(e). While such a determination may involve considerations similar to those used in assessing "total permanent disability" under the Worker's Compensation Act, they need not be identical. Under the Worker's Compensation Act, "disability" relates to the capacity to work, but as defined in the Occupational Diseases Act its *sine qua non* is the capacity to earn wages. While barely distinguishable, we are not prepared to declare that these standards will never require different results under appropriate facts.

Transfer is granted. This cause is remanded to the Worker's Compensation Board to assess Spaulding's and Kois's

---

**3.** The Occupational Diseases Act does not provide benefits for permanent partial *disability*. However, benefits may be awarded for permanent partial *impairment* under subsection 16(d)(1)–(3), (5)–(8). The Worker's Compensa-tion Act likewise provides for permanent partial impairment but not permanent partial disability. Ind.Code § 22-3-3-10(a). Employees Spaulding and Kois did receive awards for permanent partial impairment.

claims for total permanent disability consistent with the foregoing opinion.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.